1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NANCY RIVES,

11          Plaintiff,                    No. CIV S-05-1900 KJM

12      vs.

13   MICHAEL J. ASTRUE,
     Commissioner of Social Security,[1]
14
            Defendant.                    ORDER
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying her application for Disability Income Benefits ("DIB") under

18   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

19   plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

20   for summary judgment.

21   /////

22   /////

23

24   _____

25          [1]   On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
     § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
26   action.

                                          1

I. Factual and Procedural Background

Plaintiff initially applied for Disability Insurance Benefits on December 4, 2001. Administrative Transcript ("AT") 75-77, 271.  In a decision dated March 28, 2003, the administrative law judge ("ALJ") found claimant was not disabled as defined by the Act.  AT 9-23.  The Appeals Council declined review of that decision, and plaintiff filed a complaint with this court.  After filing the complaint, the parties stipulated to remand, which this court approved. AT 306-308.  Upon remand, the ALJ was directed to clarify plaintiff's mental residual functional capacity, to evaluate the testimony of plaintiff and her husband, and to employ a vocational expert to determine what other work plaintiff could perform.  Pursuant to that order, a new hearing was held on December 9, 2004, at which plaintiff appeared with counsel.  AT 381-416.

In a decision dated February 14, 2005, the ALJ determined that plaintiff was not disabled.[2]  The ALJ's decision became the final decision of the Commissioner when the Appeals

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

(more)

1    Council denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of

2    facet arthropathy, degenerative disc disease/degenerative osteoarthritis with mild to moderate

3    stenosis of the cervical spine, fibromyalgia, a depressive disorder, and myofascial pain syndrome.

4    AT 273.  The ALJ found that these impairments do not meet or medically equal a listed

5    impairment, and that plaintiff retains the residual functional capacity to perform a wide range of

6    medium unskilled work with some limitations.  Specifically, he found plaintiff is limited to

7    lifting and carrying forty pounds occasionally, twenty-five pounds frequently, and can stand,

8    walk, and sit for up to six hours in an eight-hour workday.  AT 285.  He assessed no

9    manipulative, visual, communicative, or environmental limitations, but found that "secondary to

10   [her] depressive disorder and pain, [she] is limited to performing unskilled work," and is thus

11   limited to low stress jobs dealing with things rather than people.  Id.  The ALJ also found

12   plaintiff cannot perform her past relevant work, and based on the testimony of a vocational

13   expert, there are other jobs existing in significant numbers that plaintiff can perform.

14   Accordingly, he found plaintiff "not disabled."  Id.

15          Plaintiff contends the ALJ improperly rejected the opinions of a treating physician

16   and an examining psychiatrist, improperly discredited plaintiff's testimony and that of her

17   husband, and posed an incomplete hypothetical to the vocational expert.

18   II.  Standard of Review

19          The court reviews the Commissioner's decision to determine whether (1) it is

20   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

21

22                Step five:  Does the claimant have the residual functional
               capacity to perform any other work?  If so, the claimant is not
23             disabled.  If not, the claimant is disabled.

24   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25          The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26   evaluation process proceeds to step five.  Id.

1  record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

2  Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

3  Substantial evidence means more than a mere scintilla of evidence, but less than a

4  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

5  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

6  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

7  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

8  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

9  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

10  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

11  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

12  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

13  substantial evidence supports the administrative findings, or if there is conflicting evidence

14  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

15  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

16  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

17  1335, 1338 (9th Cir. 1988).

18  III.  Analysis

19       A.  Medical Opinions of Drs. Huynh and Cheema

20            Plaintiff contends the ALJ improperly discounted the opinion of her treating

21  physician, Dr. Mai Huynh, M.D.  The weight given to medical opinions depends in part on

22  whether they are proffered by treating, examining or non-examining professionals.  Lester v.

23  Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a

24  treating professional, who has a greater opportunity to know and observe the patient as an

25  individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

26  /////

4

1    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

2    considering its source, the court considers whether (1) contradictory opinions are in the record,

3    and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

4    treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

5    F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

6    rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

7    830.  While a treating professional's opinion generally is accorded superior weight, if it is

8    contradicted by a supported examining professional's opinion (e.g., supported by different

9    independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

10   1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

11   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

12   findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

13   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

14   non-examining professional, without other evidence, is insufficient to reject the opinion of a

15   treating or examining professional.  Lester, 81 F.3d at 831.

16   In a fibromyalgia residual functional capacity ("RFC") questionnaire dated

17   November 8, 2002, plaintiff's treating physician, Dr. Huynh, opined that plaintiff could sit, stand

18   and walk for a total of about two hours in an eight hour work day, and could frequently carry ten

19   pounds and occasionally carry twenty pounds.  AT 235-236.  The ALJ rejected this opinion

20   because it was inconsistent with Dr. Huynh's own treatment notes, which the ALJ remarked

21   reflected "little information concerning . . . functional limitations imposed by the impairments."

22   AT 282.  The ALJ further remarked that Dr. Huynh's opinion contained a number of diagnoses

23   and symptoms that were not reflected in the treatment record.  Id.

24   The record supports this analysis.  For example, Dr. Huynh's November 2002

25   opinion that plaintiff had been diagnosed with migraines (AT 233), is not reflected in her

26   treatment notes prior to that date.  AT 178-226, 231-232.  In fact, in treatment notes dated April

24, 2002, Dr. Huynh reported that plaintiff denied headaches, focal weakness and numbness.
AT 179.  That treatment note further contradicts her opinion that plaintiff suffered muscle
weakness, numbness and tingling.  AT 234.  Indeed, Dr. Huynh's treatment notes from
November 26, 2001, reveal there were "minimal objective findings" with regard to many of
plaintiff's complaints of multiple joint pain, that there was no redness or swelling of her joints,
and that plaintiff wanted to apply for disability.  AT 188.  Treatment notes from January 28,
2002, reveal a similar lack of objective findings.  AT 182.  Also in her April 2002 treatment
notes, Dr. Huynh reported there was no enlargement of plaintiff's lymph nodes, no ligament
instability, no evidence of rashes, lesions or ulcers, and that plaintiff had normal range of motion
in her head, neck and hands, as well as normal strength.  AT 179.   The results of an
electroencephalogram on October 21, 2002, were normal.  AT 231.  Dr. Huynh's November
2002 opinion is further undermined by her inclusion of a diagnosis of Raynaud's Phenomenon,
which Dr. Lambie ruled out several weeks later.  AT 234, 190.  To this extent, Dr. Huynh's
opinion reflected an unconfirmed and later contradicted diagnosis.  The ALJ commented that this
tended to show Dr. Huynh's opinion was influenced by her sympathies toward plaintiff and was
likely advocative, and therefore entitled to less weight.  AT 282.

        The ALJ rejected this opinion in favor of the contradictory opinion rendered by
examining consultant, Dr. Julian R. Espino, M.D.  Dr. Espino assessed significantly fewer
functional limitations on plaintiff's ability to work.  AT 145-149, 282.  On February 24, 2002,
after reviewing plaintiff's medical records and examining plaintiff, Dr. Espino opined that
plaintiff could sit, stand and walk without restriction in an eight-hour workday, and could lift,
carry, push and pull up to ten pounds without restriction, eleven to twenty-five pounds
frequently, and twenty-six to forty pounds occasionally.  AT 149.

        Given the lack of objective findings, the ALJ appropriately weighed Dr. Espino's
opinion and concluded that Dr. Huynh's opinion was based on plaintiff's subjective complaints,
which as discussed below, were properly found not totally credible by the ALJ.  An opinion

6

1  premised on plaintiff's properly discredited subjective complaints may appropriately be rejected

2  by the ALJ.  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ also rejected

3  Dr. Huynh's opinion because it appeared she was acting more as an advocate than as an objective

4  treating physician.  See  Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (physician

5  acting as advocate may be appropriately factored into analysis).  The reasons set forth by the ALJ

6  for affording Dr. Huynh's opinion less weight are specific and legitimate and supported by

7  substantial evidence.

8          Plaintiff also asserts the ALJ improperly rejected the opinion of examining

9  consultative psychiatrist Dr. Pavitar S. Cheema, M.D.  Dr. Cheema examined plaintiff on two

10  separate occasions: on March 1, 2002 (AT 150-52), and again on August 18, 2004 (AT 321-327).

11  The ALJ focused on Dr. Cheema's 2004 report, in which he opined that plaintiff would have

12  marked limitations in understanding, remembering and carrying out detailed instructions and

13  responding appropriately to work pressures.  AT 280, 325-326.  Dr. Cheema also opined plaintiff

14  would have moderate to severe limitations in maintaining attention, concentration, persistence

15  and pace in a normal workday, and could have repeated deteriorations with the stress of an eight-

16  hour job.  AT 280, 323-324.

17          The ALJ declined to fully credit Dr. Cheema's opinion in this regard, noting that

18  the "mental status examination did not show any significant abnormalities except that the

19  claimant stated she was unable to perform the concentration test during the exam."  AT 280.

20  Indeed, Dr. Cheema's report shows plaintiff's abstract thinking was logical, she was able to

21  repeat four digits forward and three digits backward, and she was alert and her thinking was

22  clear.  AT 323.  The concentration test cited by the ALJ consisted of Dr. Cheema's asking

23  plaintiff what one hundred minus seven was.  AT 323.  Plaintiff gave the correct response, and

24  then claimed that she "cannot do it."  AT 323.  This response alone casts some doubt as to the

25  validity of Dr. Cheema's conclusion that plaintiff had marked and severe limitations on her

26  ability to concentrate.

1        Moreover, although the results from Dr. Cheema's 2002 examination of plaintiff

2   were practically identical to those from 2004, he inexplicably rated her limitations as

3   significantly deteriorated in 2004.  In 2002, he opined plaintiff would have only mild to moderate

4   difficulty with remembering, understanding and carrying out complex job instructions secondary

5   to problems with attention and concentration, AT 152, whereas in 2004, he assessed such

6   difficulty as "moderate to severe."  AT 323-324.  The record contains no objective findings or

7   articulated reasons to explain this contradiction.  The ALJ reasoned that there were no objective

8   medical findings to support a significant deficit in concentration or memory, and no evidence of

9   ongoing treatment for a psychiatric impairment.[3]  AT 280.  The ALJ rejected Dr. Cheema's 2004

10  opinion for these reasons, and because it appeared based primarily on plaintiff's subjective

11  complaints, which as discussed below, the ALJ properly found not totally credible.  The ALJ's

12  reasons for rejecting Dr. Cheema's opinion were sufficient.

13      B.  Credibility

14      Plaintiff also contends the ALJ improperly discredited her testimony.  The ALJ

15  determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

16  if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94

17  F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility

18  finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d

19  1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,

20  cogent reason for the disbelief").

21      In evaluating whether subjective complaints are credible, the ALJ should first

22  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

23  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

24  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

25

26      [3] Although plaintiff reported undergoing psychiatric treatment two years ago, there was
    no evidence she continued such treatment.  AT 278, 386.

medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider:

(1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity

and effect of symptoms, and inconsistencies between testimony and conduct also may be

relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure

to seek treatment for an allegedly debilitating medical problem may be a valid consideration by

the ALJ in determining whether the alleged associated pain is not a significant nonexertional

impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may

rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458

(9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172,

177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering,

the Commissioner's reasons for rejecting the claimant's testimony must be clear and

convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.

1999).

　　　　At the most recent hearing, plaintiff testified she can stand for only five to ten

minutes and can sit for only fifteen minutes before she needs to get up.  AT 389.  She also

testified she is able to lift only three pounds, and has poor concentration and memory.  AT  386,

389.  The ALJ noted that despite her reported inability to concentrate, plaintiff was able to watch

television, read, drive her children to school, and help them with their homework.  AT 282, 388-

390.  The ALJ also noted that many of plaintiff's complaints – including her tremor, reports of

jaw pain, tongue and facial numbness, sore throat, irritable bowel syndrome and itchy skin –  had

no etiology and were unsupported by objective medical findings.  AT 282, 182, 188, 216, 231,

348, 353-355.  The ALJ further noted that Dr. Huynh's opinion –  the only medical opinion

1 arguably supporting the severity of plaintiff's claimed limitations – was itself not supported by

2 the record.  As discussed above, the ALJ's analysis in this regard was proper.  The factors

3 considered by the ALJ were valid and supported by the record.  The ALJ's credibility

4 determination was based on permissible grounds and will not be disturbed.

5     C.  Lay Witness Testimony

6         Plaintiff further contends the ALJ did not properly evaluate the testimony of

7 plaintiff's husband.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment

8 affects ability to work is competent evidence, and therefore cannot be disregarded without

9 comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala,

10 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family members in a position to observe a

11 plaintiff's symptoms and daily activities are competent to testify to condition).  "If the ALJ

12 wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to

13 each witness."  Dodrill, 12 F.3d at 919.

14         Plaintiff's husband testified plaintiff is significantly limited in her ability to walk

15 and perform activities of daily living.  AT 397-408.  The ALJ expressly acknowledged this

16 testimony but set forth germane reasons for discounting the testimony.  As with plaintiff's

17 testimony, the ALJ found that the objective medical evidence did not support the severe degree

18 of functional limitations assessed by plaintiff's husband.  AT 282.  As discussed above, that

19 finding is supported by the record, including the opinions of examining physicians, Dr. Espino

20 and Janet O'Brien, M.D.  AT 145-149, 282, 182, 188, 216, 231, 328-340, 348, 353-355.  The

21 ALJ also noted despite plaintiff's numerous complaints of back pain in late 2002 and early 2003,

22 the records after mid-2003 showed no further complaints of severe chronic pain and/or

23 difficulties with walking and standing.  AT 282.  The record supports this analysis.  See AT 367,

24 372, 376, 378 (revealing repeated complaints of back pain); compare AT 348, 353-355, 357, 360,

25 362, 364 (treatment notes from mid-2003 and after revealing no complaints related to

26 musculoskeletal pain or related functional limitations).  Based on the foregoing, the ALJ did not

1  err in his analysis of the lay witness testimony.

2      D.  Hypothetical Posed to Vocational Expert

3          Finally, plaintiff contends the hypothetical posed to the vocational expert was

4  incomplete because it did not accurately reflect plaintiff's "lack of mental skills" as opined by

5  Dr. Cheema.  See Pl.'s Mem. in Supp. of Mot. for Summ. J. at 23:4-5.  The court assumes

6  plaintiff objects to the ALJ's failure to include the mental limitations assessed by Dr. Cheema in

7  2004.

8          Hypothetical questions posed to a vocational expert must set out all the

9  substantial, supported limitations and restrictions of the particular claimant.  Magallanes v.

10  Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's

11  limitations, the expert's testimony as to jobs in the national economy the claimant can perform

12  has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

13  ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations

14  of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination

15  must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d

16  418, 422-23 (9th Cir. 1988).

17          The ALJ based his assessment of plaintiff's mental residual functional capacity on

18  substantial evidence in the record, including plaintiff's own daily activities, the opinion of state

19  agency physician, Dr. Donald R. Walk, M.D. (AT 227-229), and Dr. Cheema's March 1, 2002,

20  opinion (AT 152).  See AT 279-282.  The ALJ found plaintiff had moderate limitations in

21  maintaining concentration, persistence and pace, mild difficulties in maintaining social

22  functioning, and mild to moderate difficulty remembering, understanding and carrying out

23  complex job instructions.  AT 280-282.  Accordingly, the ALJ found plaintiff should be limited

24  to performing unskilled work that is low-stress and involves working with things rather than

25  people.  AT 281, 285.

26  /////

1   　　　　The hypothetical posed to the vocational expert reflected these limitations.

2   AT 410-412.  The ALJ did not err by posing a hypothetical to the vocational expert that did not

3   incorporate the limitations assessed by Dr. Cheema in 2004.  As discussed above, the ALJ

4   properly discredited Dr. Cheema's 2004 opinion, noting it inexplicably contained more severe

5   limitations than his 2002 opinion, despite nearly identical objective findings.  The ALJ was under

6   no obligation to include nonexertional limitations that were properly discredited.  There was no

7   error in the hypothetical the ALJ posed to the vocational expert.

8   　　　　The ALJ's decision is fully supported by substantial evidence in the record and

9   based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

10   　　　　1.  Plaintiff's motion for summary judgment or remand is denied, and

11   　　　　2.  The Commissioner's cross-motion for summary judgment is granted.

12   DATED:  September 30, 2007.

13

14

15   　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE

16

17

18   KJM:mb

19   Rives.1900.ss.wpd

20

21

22

23

24

25

26